IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JAMES GARDNER, #L8046  PLAINTIFF

VS.  CIVIL ACTION NO. 4:10-CV-85-LRA

EAST MISSISSIPPI CORRECTIONAL FACILITY, ET AL  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the Court *sua sponte* for evaluation pursuant to 28 U.S.C. § 1915(e)(2). The Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2), applies to prisoner proceedings *in forma pauperis* and provides that "the court shall dismiss the case at any time if the court determines that . . .(B) the action or appeal -- (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A plaintiff's claim shall be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998).

## FACTS

Plaintiff James Gardner appeared before the undersigned on March 3, 2011, for an omnibus hearing. He explained his claims under oath to the Court, and this explanation has been considered in conjunction with the allegations contained in the Complaint and pleadings.[1] Also submitted at the hearing were Gardner's medical records, which were

---

[1] The facts are taken primarily from Gardner's Complaint, his omnibus hearing testimony, and his medical records, and are presented in a light most favorable to him.

authenticated and admitted into evidence at the hearing [ECF No. 29] and have been reviewed and considered by the Court.

Gardner is a prisoner in the custody of the Mississippi Department of Corrections ["MDOC"], currently housed in the East Mississippi Correctional Facility ["EMCF"] in Meridian, Mississippi. According to his Complaint, he was transferred to EMCF from Parchman on July 16, 2007. While at other facilities, Gardner testified that he faked suicide in order to get transferred to a hospital. Yet his suicide attempt only resulted in his transfer to EMCF. According to Gardner, he repeatedly has been denied care for his stomach problem by these Defendants since his arrival at EMCF. Gardner contends that he has had a parasite, or tapeworm, for many years, and Dr. Abangan and nurse Atwood have denied him the appropriate care. Gardner concedes that he has been examined by medical personnel while at EMCF for different reasons, but not for his stomach problems. He has been treated by Dr. Abangan during this time, but the wrong tests were performed. Gardner charges that although he has been examined by psychiatrists on many occasions, he has not seen a medical doctor in years. The nurses tell him that the medical doctors will not examine him. He stopped filing sick calls the previous year because he was always just told that it was all in his head. He had acid reflux in 2007 or 2008, and his appetite has declined. He has lost over 20 pounds since 2007.

Gardner charges that Defendant Dr. Abangan refuses to give him medical care for his stomach. Gardner has seen him in the hall and tells him about the tapeworm. He has

told nurses about his problem, although he has not actually seen or been examined by Defendant Atwood . He has written Defendant Atwood, and she has responded by writing him back that he is not sick. Dr. Abangan has also written him back, telling him that Defendant Atwood says he has no medical problem.[2] Gardner testified that Defendant Atwood did make arrangements for him to see a medical doctor in 2007 or 2008, but the right tests were not performed. Gardner concludes that Dr. Abangan should not be relying on the tests performed by another physician.

Gardner charges that he was retaliated against for complaining about his medical care by being poisoned in 2009. He does not charge these Defendants with poisoning his food but he is certain that it was staff; he does know who did it, though. Gardner admits that he started a fire in the prison in order to get medical attention. He testified that he was subjected to excessive force while at EMCF; these Defendants are not the persons who used force on him.

Gardner admits that he has not filled out a request for medical care for his tapeworms since early 2010. He concedes that he was examined by a medical doctor while at EMCF, and that doctor told him he did not have a tapeworm. That doctor did not perform the right test, according to Gardner.

---

[2]The medical records reflect that on April 19, 2010, Gardner wrote a medical request form, stating "[t]his is a fact nothing less than the truth I can feel this tapeworm that the doctor says I don't have but actually do have touching my brain and I need help." ECF No. 29-2, p. 9. Defendant Atwood replied to the request the next day by writing: "You do NOT have a tapeworm touching your brain. You do not have a tapeworm."

3

As relief, Gardner seeks the following:

> I request that the Court save my life. Protect me from further retaliation death and each rule violation I got striving to establish health care for the parasitic tapeworm I have had since 2007 be removed from my MDOC records, and that I be transferred from EMCF to CMCF to receive medical treatment to remove the parasitic tapeworm if it takes surgery. Also need the Court to have EMCF move me off of HU1D pod to an HUY pod where I can go back to eat my food tray off the line to prevent further food poison...

Complaint, ECF No. 1, p. 4.

Gardner's medical records consist of approximately 480 pages. The Court has reviewed these records, and the following is a synopsis of pertinent portions of the records.

On August 5, 2007, Gardner completed a medical request stating that he needed to see a doctor to get some medications for tapeworms. ECF No. 29-2, p. 30. Defendant Atwood replied: "What makes you think you have tape worms?" On August 8, 2007, Gardner completed a medical request stating: "It might seem obvious but I actually need to be checked out because I honestly have tapeworms!! Seriously." The reply indicates an exam was scheduled on August 23, 2007. ECF No. 29-2, p. 29. On August 26-27, 2007, Gardner threatened and attempted suicide; he was admitted to the infirmary and was treated by mental health medical personnel. ECF No. 29-2, pp. 68-69; 72-74.

On October 30, 2007, Gardner filled out a medical request stating that he was having suicidal thoughts. He was seen by a physician and given a phone call to his family. On November 4, 2007, Gardner filled out a medical request stating "I got tapeworms. I need to

4

see the doctor." ECF NO. 29-2, p. 26.  Defendant Atwood replied: "You do not have any tapeworms–why do you think you do?"

On January 24, 2008, Gardner filed a medical request stating: "I need to see somebody because I got tapeworms and they are moving around in my stomach and I need some help because my stomach is killing me...." ECF No. 29-2, p. 23.  A response was given, stating that no treatment was indicated.  On April 7, 2008, Gardner completed a medical request stating: "I actually got tapeworms." ECF No. 29-2, p. 18.  A reply was written by T. Shepherd, R.N., stating "[y]ou have been seen several times about this.  It was determined that you do not have tapeworms."  On July 23, 2008, Gardner's medical request stated: "I'm still having problem with tapeworm or it's something actually wrong with my stomach that is causing me heart problems and chest pains." ECF No. 29-2, p. 21.  T. Shepherd, R.N., replied "no treatment indicated."  On July 24, 2008, a nursing assessment confirmed that Gardner complained that there was bubbling in his stomach and that he could hear the worms talking.  He was referred to the mental health department, or Dr. Moore, and given milk of magnesium.  ECF No. 29-2, p. 53.

On August 7, 2008, Gardner sent a medical request stating that they would not assist him with medical services "concerning these tapeworms" and that his next step was to file a lawsuit.  "Due to the fact I actually got tapeworms but ya'll haven't took me seriously but the courts will, for my pain and suffering."  ECF No. 29-2, p. 20.  Also on August 7, 2008, records show Gardner was evaluated by Dr. Neil Fisher, M.D., due to Gardner's complaints

5

that he had a tapeworm in his stool. According to Dr. Fisher's notes, Gardner complained that the tapeworm "gurgles," moves, and is eating his food; he has had it for three years. ECF No. 29-2, p. 52. Dr. Fisher instructed that he evaluate his stool and show the nursing staff if any worm part is visualized. He also told Gardner that tapeworms were very rare in the United States. Dr. Fisher directed him to increase his exercise and quit smoking to help him gain weight.

Medical records for September, 2008, show that Gardner threatened suicide by cutting himself, causing superficial wounds. ECF No. 29-2, pp. 32-34. On October 10, 2008, Gardner completed a medical request stating that he would set himself on fire at 5:00 p.m. in order to "prove how serious [he] is about [his] movements, and this tapeworm." "And I don't want it but it is a tapeworm in my stomach and I am sick of the tapeworm also." ECF No. 29-2, p. 17. Defendant Atwood replied: "That is not a good idea at all and we don't really respond to threats. I notified the officers to watch you."

On February 3, 2009, Gardner filled out a medical request stating: "My sick calls shouldn't be ignored; I promise to god that I have tapeworms. I have suffered long enough I don't deserve this punishment. This is a dangerous illness I need to discuss this with the doctor." ECF No. 29-2, p. 15. Defendant Atwood responded on March 4, 2009: "You have seen the doctor for this problem–you were told what to do by Dr. Fisher- That has not changed." On April 5, 2009, Gardner filled out a medical request stating: "I don't have tape worm any more it was all in my mind but I need some pill that help or will help me use the

bathroom...." ECF No. 29-2, p. 13.  On the same date, he filled out another request stating: " I need to talk to the psychologist because I really believe there is something wrong with my mind.  I used to think I had tapeworms and I need to be placed back on ...."  A response was given, telling Gardner he should talk with his unit mental health worker; "they will refer you to medical if deemed necessary."  ECF No. 29-2, p. 12.

In January 2010, Gardner was assessed by an R.N. after complaining of chest pains.  The report indicates that Gardner stated he was okay, but that he kept "bringing up tapeworms."  ECF No. 29-2, p. 29.  Gardner was treated by medical personnel on May 28, 2010; July 17, 2010; and July 27, 2010; the May treatment included being transported to a hospital for a laceration to his eye.  ECF No. 29-2, p. 47; pp. 153-155.  His quarterly "treatment team review" was performed on October 14, 2010.  The report shows his complaints of having worms in his stomach; he reported worms moving inside his body and moving to his brain.  His diagnosis was "delusional disorder."  ECF No. 29-2, pp. 161-62; 166.  On January 25, 2011, he was treated by a J. Pilkinton, MD; a urine toxin screen was performed and pain medication was given.  ECF NO. 29-2, p. 46; 29-2, pp. 103-105.

Gardner testified at the omnibus hearing that he stopped filing requests for medical care due to his tapeworms in early 2010; he did not think it would help to seek further help except through the Court.  His medical records reflect that he did report his complaints of tapeworms in 2010, although most of his requests for medical care for the tapeworms were in 2007-2009.

## LEGAL ANALYSIS

Deliberate indifference to a prisoner's serious medical needs is an actionable Eighth Amendment violation under §1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976). The standard for finding deliberate indifference is a "subjective inquiry." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), cited in *Lawson v. Dallas County*, 286 F.3d 257 (5th Cir. 2002). A plaintiff must show that the prison officials were actually aware of the risk of harm to plaintiff, yet consciously disregarded or ignored it. *Id.*

In *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), the Court of Appeals for the Fifth Circuit summarized the case law regarding the standard of "deliberate indifference" to the medical concerns of prisoners in part as follows:

> ... A prison official acts with deliberate indifference "only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it." Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. "Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" "Deliberate indifference 'is an extremely high standard to meet.'"

463 F.3d at 346 (citations and footnotes omitted).

The medical records are accepted as evidence that Gardner has been provided with consistent medical care throughout his incarceration at EMCF. Although much of his medical care has been psychiatric in nature, the records reflect that he has also been treated by medical doctors for complaints not related to his mental illness. The records confirm that his complaints of tapeworms were addressed by medical personnel, including Defendants Dr. Abangan and Nurse Atwood. At no time was Gardner diagnosed with having tapeworms by any medical personnel at EMCF or any other facility. His complaints of tapeworms were found to be a result of his delusional psychiatric illness. No objective medical evidence was obtained that reflected any evidence of tapeworms. This Court cannot second guess the diagnoses of EMCF medical personnel.

"The decision whether to provide additional treatment 'is a classic example of a matter for medical judgment'"and "[a] prisoner's disagreement with his medical treatment, absent exceptional circumstances" does not satisfy the deliberate indifference requirement. *Estelle*, 429 U.S. at 107; *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

For a constitutional violation to be stated due to medical care, a plaintiff must allege that these Defendants were deliberately indifferent to a serious medical need. Gardner's own testimony defies a finding of "indifference"; he admits to having been provided medical care, but he was not satisfied with the care provided. The facts as alleged by Gardner do not state a constitutional claim. Defendants did not fail to treat Gardner; the records are replete with evidence of constant medical care, albeit most of it psychiatric in

nature. Although his psychiatric illness may be found to be a "serious medical need," it was treated consistently. No tapeworms were diagnosed by medical personnel and, therefore, not treated.

This Court cannot interfere with medical personnel's diagnoses or judgment or with the decisions they make relating to the appropriate treatment given an inmate. To prove deliberate indifference, Gardner must show that these Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." The records rebut any showing of intentional mistreatment; his complaints were addressed, not ignored, and there was no "refusal" to treat. This is a case where Gardner disagrees with the treatment provided and his diagnosis— and this cannot establish deliberate indifference unless exceptional circumstances are shown. *Id.*

Case law in the Fifth Circuit confirms that a prisoner is not entitled to his *choice* of treatments. *Gobert*, 463 F.3d at 346; *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992). To the extent that Gardner argues that he should have been treated by a physician rather than nurses or psychiatric personnel, federal courts in the Fifth Circuit have concluded that such claims do not implicate the Constitution. *See e.g., Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998) (citing *Mayweather v. Foti*, 958 F.2d at 93).

Gardner wants treatment for a condition that medical personnel at EMCF do not believe he has. Instead, they are treating him for the conditions actually diagnosed by the

10

medical personnel at EMCF.  A constitutional claim has not been stated under these circumstances.  Gardner does not charge these Defendants with excessive force or retaliation or with poisoning him.  His Complaint shall be dismissed with prejudice.

## CONCLUSION

For these reasons, the Court finds that the facts asserted by Gardner do not state a claim upon which relief may be granted and his Complaint is frivolous under the law.  The Complaint shall be dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (ii), and  Final Judgment in favor of Defendants shall be entered.

The dismissal shall be considered a strike under 28 U.S.C. § 1915(g).[3]

IT IS, THEREFORE, ORDERED that the Complaint is dismissed with prejudice and Final Judgment in favor of Defendants is entered.

SO ORDERED this the 17th day of April 2012.

                                       s/   Linda R. Anderson
                                       UNITED STATES MAGISTRATE JUDGE

---

[3] "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."